FILED
2014 Aug-05  AM 09:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BERYL CRUTCH,** | } | |
| | } | |
| **PLAINTIFF,** | } | |
| | } | |
| **v.** | } | **CASE NO.:  3:12-CV-00827-MHH** |
| | } | |
| **LAWRENCE COUNTY BOARD OF** | } | |
| **EDUCATION, HEATH GRIMES,** | } | |
| **and JEAN HOWARD,** | } | |
| | } | |
| **DEFENDANTS.** | } | |
| | } | |
| | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Beryl Crutch is a former tenured employee of defendant Lawrence County Board of Education.  Ms. Crutch taught family and consumer science at Lawrence County High School.  In 2010, the Board terminated Ms. Crutch's employment on the recommendation of defendant, Superintendent Heath Grimes, due to Ms. Crutch's poor performance.  According to Ms. Crutch, her discharge was racially discriminatory in violation of 42 U.S.C. § 1983.[1]  In her lawsuit, Ms. Crutch seeks compensatory and punitive damages and equitable relief, including re-instatement.  (Doc. 14, pp. 10-11).

---

[1] Initially, Ms. Crutch also asserted claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, and Alabama law.  The Court dismissed those claims early in this litigation.  (*See* Doc. 13).

Defendants ask the Court to enter summary judgment on Ms. Crutch's claim. (Doc. 28).  As explained in greater detail below, the Court grants the motion because Ms. Crutch has not presented evidence that establishes a prima facie case of discrimination.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex*, 477 U.S. at 323).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."

*Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

When considering a summary judgment motion, the Court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

**FACTUAL BACKGROUND**

<u>Ms. Crutch's Employment History at Lawrence County High School</u>

The Board hired Ms. Crutch in 1994. Initially, she taught home economics at Courtland High School. (Doc. 29-2, p. 18). In 2003, Ms. Crutch began teaching family and consumer science at Lawrence County High School. (Doc. 29-8, ¶ 3). That year, Ms. Crutch was reprimanded for calling students "liars." (*Id.* at ¶ 9). The following year, in 2004, Ms. Crutch received a written warning from the Superintendent for inappropriate statements and behavior. (Doc. 29-4, p. 1). During the 2005-2006 school year, the principal of Lawrence County High School gave Ms. Crutch a written warning for failing to maintain accurate grades and for failing to enter grades on time. (Doc. 29-4, p. 2). At the end of the 2006-2007 school year, Ms. Crutch received a written warning and suspension from the Superintendent for hitting a student with a yardstick and other inappropriate

behavior.   (Doc. 29-4, p. 3).   During the 2007-2008 school year, Ms. Crutch received a written warning and suspension from the Superintendent for asking to see eighth-grade students' bras.  (Doc. 29-4, p. 4).

Defendant Jean Howard became the Assistant Principal of Lawrence County High School in 2009 and served as Principal from 2010 through 2013.  (Doc. 29-8, ¶ 2).  During that time, Ms. Howard witnessed Ms. Crutch's poor job performance with respect to grades and lesson plans.  Ms. Howard also received complaints from students and parents about Ms. Crutch's misbehavior.  (*Id.* at ¶ 3).[2]  Ms. Howard and defendant Heath Grimes, Superintendent, concluded that Ms. Crutch's employment should be terminated because previous attempts to correct Ms. Crutch's misconduct had failed.  (*Id.* at ¶¶ 48-49).  Mr. Grimes drafted a notice of intent to terminate Ms. Crutch's employment.  Ms. Howard delivered the notice to Ms. Crutch on December 16, 2010.  (Doc. 29-8, ¶ 51).  The notice was also served on the Board.[3]  (Doc. 29-9, ¶¶ 8-10).

---

[2] Ms. Crutch asserts that Ms. Howard sought out and encouraged students to complain about her, but Ms. Crutch offers no evidence to support this claim.  (*See* Doc. 34, pp. 5-6).

[3] Terminations initiated before July 1, 2011, are governed by the Alabama Teacher Tenure Act. Ala. Code § 16-24C-14(b).  To terminate a tenured teacher like Ms. Crutch, the Act requires the superintendent to provide written notice of his intention to seek termination to the teacher and to the employing board.  The notice must contain statutory reasons for the termination, a short and plain statement of facts that support of the reasons for termination, and the time and place for the board's meeting on the proposed termination.  The written notice must state that to request a conference with the board, the teacher must file a written request with the superintendent within 15 days of receipt of the notice.  Ala. Code § 16-24-9(a) (repealed).

The notice listed as the reasons for Ms. Crutch's proposed termination "incompetence, neglect of duty, failure to perform duties in a satisfactory manner, insubordination, or other good and just cause." (Doc. 29-9, p. 13). The notice also listed 32 statements of fact in support of the stated statutory reasons for termination:

1. She addresses students improperly in class.

2. She . . . tells students in her class that girls should let their hair grow because men like it.

3. She tells students she likes men with hair on their bodies.

4. She discussed with students the reason she divorced her husband.

5. She rubbed a male student's leg, to see if he had a hairy leg.

6. She gives students zeros, despite the directions from her principal not to do so.

7. When she sends out progress reports, a high percentage of her students fail because she has so many zeros.

8. She loses students' work.

9. She told the principal that she gave zeros because she had not had time to grade all the papers.

10. Although the principal has told her to correct the grades, she has not done so.

11. She has not provided lesson plans to STI.[4]

_____

[4] STI is the computer program used by teachers throughout the state of Alabama to enter grades and lesson plans. Parents and students can check the progress of grades during a nine-week period by using an STI access number. (Doc. 29-8, ¶ 4).

12.    She does not timely put grades in STI and when she does, they are not appropriate grades in that there are many zeros.

13.    Her interactions with students are not respectful.

14.    She plays favorites among students.

15.    She does not help students who request it.

16.    She loses students' work and then gives a low grade to the same students.

17.    She picks a particular student and treats him worse than others.

18.    She retaliates against students when their parents complain about her.

19.    She told students in her class that they were backstabbers.

20.    She told students in her class that they were evil.

21.    She told students in her class that they were liars.

22.    She has told students in her class that she wants nothing to do with them.

23.    On occasion when a student receives a low grade and asks what he or she has done wrong, she refuses to tell him or her.

24.    When the principal attempts to discuss the issues set forth above with Ms. Crutch, she asserts that she has done nothing wrong.

25.    She discusses parent phone calls or complaints with students.

26.    Parents who monitored students['] assignments at home and knew the assignments were turned in, were upset because of the misplacement by Ms. Crutch of the student work.

27.    She makes inappropriate remarks and sounds in reference to the superintendent including expressing that he is a "fine looking man" in front of other teachers.

28.    Despite directions by the principal, she allows students to write their names and other comments on school property.

29.    When the principal tried to address the student zeros with her, she refused to talk to the principal.

30.    She sent un-graded student papers to the principal's office for the principal to grade and enter the grades in STI.

31.    When she left the principal's office, she complained loudly in another teacher's room.

32.    As of the date of these charges, she still has not graded student papers, despite the direction of the principal.[5]

(Doc. 29-9, pp. 13-15).

The notice stated that the Board would hold a meeting on January 13, 2011, "to give Ms. Crutch an opportunity to have a conference with the Board with regard to this recommendation." (*Id.*). Through her lawyer at the time, Ms. Crutch advised the Board's attorney that she waived the right to attend the Board meeting on her termination. (Doc. 29-9, p. 18). At the meeting on January 13, 2011, the Board voted to approve the recommendation of Mr. Grimes to terminate Ms.

---

[5] In her brief, Ms. Crutch states only that the "alleged thirty-two (32) statements of facts were denied in part by Crutch as to actual occurrence in some instances and taken out of context in others." (Doc. 34, p. 3). The record establishes that Ms. Crutch does not deny many of the statements. For example, in December 19, 2010, Ms. Crutch provided a written response to the 32 statements of fact, which defendants attached as an exhibit to their motion for summary judgment. (Doc. 29-4, pp. 14-19). In her written response, Ms. Crutch admitted many of the allegations against her, including that she violated the no zero policy and that she had engaged in some inappropriate conduct toward students. (*See id*.).

Crutch's employment.  Mr. Grimes served Ms. Crutch with written notice of the Board's decision and her right to contest the decision on January 14, 2011.  (Doc. 29-9, p. 20).[6]

On January 28, 2011, Ms. Crutch submitted a notice of contest of the Board's decision.[7]  (Doc. 29-9, ¶ 15).  An arbitrator was selected to serve as a neutral hearing officer.  On May 9 and May 10, 2011, the hearing officer held an evidentiary hearing on the Board's decision to terminate Ms. Crutch's employment.

On August 3, 2011, the hearing officer issued a Findings of Fact, Conclusions of Law, and Order that upheld the termination of Ms. Crutch's employment.  The hearing officer concluded that "the Board [ ] proved to her reasonable satisfaction by a preponderance of the evidence the statutory grounds of incompetency, neglect of duty, failure to perform duties in a satisfactory manner, or other good and just cause in support of its cancellation of Ms. Crutch's contract, based on the law in the State of Alabama."  (Sealed Doc. 31-25, p. 29).  Ms. Crutch

---

[6] Under the Alabama Teacher Tenure Act, if the Board decides to approve the termination, the Superintendent must then provide written notice of the Board's decision to the teacher.  The notice must inform the teacher that she may appeal the decision to a hearing officer by filing a notice of contest within 15 days of the receipt of the notice.  Ala. Code § 16-24-9(b) (repealed).

[7] Under the Alabama Teacher Tenure Act, if a teacher files a notice of contest, a hearing officer may be selected by mutual agreement or by submitting a joint request for a panel of arbitrators to the Federal Mediation and Conciliation Service (FMCS).  The FMCS provides a panel of 10 hearing officers.  Each side may strike some or all of the hearing officers.  If there is not a mutually acceptable hearing officer, the FMCS appoints a hearing officer.  Ala. Code § 16-24-20 (repealed).

did not appeal the hearing officer's decision to the Alabama Court of Civil Appeals.  (Doc. 29-9, ¶ 21).

        Current Lawsuit

        Ms. Crutch filed this action on March 15, 2012.  In her original complaint, Ms. Crutch alleged that the defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 1983, and Alabama state law.  (Doc. 1).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants asked the Court to dismiss Ms. Crutch's amended complaint for failure to state a claim.  (Doc. 4).  After the parties briefed the motion, the presiding judge, Chief Magistrate Judge Paul Greene, recommended that the district court dismiss all of the claims with prejudice except for Ms. Crutch's claim for racially discriminatory discharge under § 1983.  (Doc. 8).  The defendants objected to Judge Greene's Report and Recommendation to the extent that it did not recommend the dismissal of the § 1983 claim.  (Doc. 9).  The District Court adopted Judge Greene's Report and Recommendation in part, but rejected Judge Greene's recommendation to deny the motion on Ms. Crutch's §

1983 claim.  (Doc. 13).  The District Court dismissed the § 1983 claim without prejudice and granted Ms. Crutch leave to replead it.[8]  (*Id.*).

Ms. Crutch filed an amended complaint on August 20, 2012, which contained only one claim under § 1983.  (Doc. 14).  The parties conducted discovery on Ms. Crutch's § 1983 claim.  Following discovery, the defendants filed a motion for summary judgment.  (Doc. 28).  In support of the motion, the defendants submitted a brief and a collection of evidentiary materials that includes affidavits, deposition testimony, and copies of some of Ms. Crutch's employment records.  (Docs. 29-1 th. 29-10 and Sealed Docs. 31-1 th. 31-25).[9]  Ms. Crutch filed a brief in opposition to the defendants' motion (Doc. 34) and submitted evidentiary materials, including excerpts from deposition testimony and newspaper reports. (Docs. 34-1 th. 34-25).  The defendants filed a reply brief in support of their motion.  (Doc. 36).  The Court heard argument on the motion on July 9, 2014.

On this record, the Court considers the defendants' summary judgment motion.

---

[8] Initially, Chief Magistrate Judge Paul Greene presided over this case. When he retired, the Court re-assigned the case to the undersigned judge.  (Doc. 16).

[9] The defendants moved to file certain evidentiary materials under seal because the materials refer to the names of minor students.  (Doc. 25).  The Court granted the defendants' motion. (Doc. 27).

## ANALYSIS

A plaintiff may establish a claim of discrimination "through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008). Ms. Crutch offers only circumstantial evidence of discrimination, so the Court evaluates her claims through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[10]

Under the *McDonnell Douglas* scheme, Ms. Crutch first has the burden to establish with evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Such evidence must be "adequate to create an inference that an employment action was based on a[n] [illegal] discriminatory criterion." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977). If Ms. Crutch establishes a prima facie case, then the Court presumes that her employer acted illegally unless her employer articulates a legitimate, non-discriminatory reason for its action.

---

[10] Ms. Crutch provided no direct evidence of discriminatory remarks made by a Board member or employee of the Board. Thus, her claims must be based on circumstantial evidence. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption."); *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) ("[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification] are direct evidence of discrimination.") (internal quotations and citation omitted). At the hearing on the defendants' motion, Ms. Crutch stated that she was unable to submit certain evidence of the defendants' discrimination because the individuals who would have provided the evidence were afraid of speaking publicly. The Court understands Ms. Crutch's asserted dilemma, but Ms. Crutch waited too long to present the issue to the Court. Had Ms. Crutch raise the issue during discovery, the Court could have entered orders that would allow Ms. Crutch to seal this evidence if she was able to demonstrate good cause for doing so.

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). The burden then shifts back to Ms. Crutch to produce evidence that shows that her employer's justification is a pretext for discrimination. *Id.*

To establish a prima facie case of discrimination, Ms. Crutch must show that her employer treated similarly situated employees outside the class more favorably. *Brooks v. CSX Transp., Inc.*, 2014 WL 480382, at *4 (11th Cir. Feb. 7, 2014). The United States Supreme Court has recognized that even if a plaintiff is guilty of misconduct for which her employer might legitimately discipline her, the plaintiff may establish a claim of unlawful discrimination if her employer treated other employees outside of her protected class more favorably when the comparator employees engaged in the same misconduct. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282-83 (1976). The comparators must be similarly situated to the plaintiff "in all relevant respects," *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), to "prevent courts from second-guessing employers' reasonable decisions." *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (quotation marks omitted). "The most important factors in disciplinary context are the nature of the offenses committed and the nature of the punishment imposed." *Maynard v. Board of Regents of Div. of Univ. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (quotation omitted).

Ms. Crutch has not provided the names of any comparators in her brief in opposition to defendants' motion for summary judgment; however, two white employees, Cassie Goodwin and Carolyn Dyar, are mentioned in exhibits attached to Ms. Crutch's brief.[11] One exhibit discusses Ms. Goodwin, the cheerleading sponsor and English teacher at R.A. Hubbard High School. (Docs. 34-2; 34-8; 34-9). According to Ms. Crutch, a student whose name she could not remember told her that Ms. Goodwin was caught having sex on the principal's desk. (Docs. 34-8 and 34-9).

Ms. Crutch also relies upon the deposition testimony of Mr. Grimes in which he discusses Ms. Dyar. (Doc. 34-15, p. 1). According to Ms. Crutch, Ms. Dyar was ordered to transfer to another school, but she refused to go. (Doc. 29-2, p. 3). Mr. Grimes testified that he had not received complaints about Ms. Dyar from parents, but he recommended that she be transferred because "her colleagues were not real happy with her. She was having some health issues and I felt like needed to be separated from the situation." (*Id.*).

According to Ms. Crutch, she has presented prima facie evidence of discrimination because she demonstrated that Ms. Dyar was not disciplined, and Ms. Goodwin was suspended without pay but was not fired. (*See* Docs. 34-2 and

---

[11] Ms. Crutch's exhibits also mention an alleged incident involving a former principal of R.A. Hubbard High School. Because the former principal is African-American, he may not serve as a comparator for purposes of Ms. Crutch's race discrimination claim. (*See* Doc. 29-2, p. 12).

34-7 th. 34-9).  The Court disagrees.  Even if Ms. Goodwin and Ms. Dyar engaged in the conduct that Ms. Crutch alleges, Ms. Crutch has not established that their conduct was "nearly identical" to the conduct for which Ms. Crutch was fired.  The Board made its decision to terminate Ms. Crutch's employment based on her documented history of poor performance and her failure to admit wrongdoing. Moreover, because Ms. Crutch did not provide the Court with the disciplinary records of the alleged comparators, the Court is unable to determine whether the alleged comparators engaged in "nearly identical" conduct.[12]  On the record before the Court, Ms. Crutch has not carried her burden to demonstrate that she is similarly situated to any of the white employees that she claims were disciplined less harshly.  *McCann*, 526 F.3d at 1373.  Consequently, as a matter of law, she has not established a prima facie case of discrimination.[13]

---

[12] Ms. Goodwin and Ms. Dyar are the only comparators who appear in the exhibits that Ms. Crutch attached to her brief in opposition to defendants' motion for summary judgment.  Ms. Crutch identifies in her deposition and interrogatory responses other employees who she believes committed worse behavior than her but were not fired.  (Doc. 29-4, p. 9; Doc. 29-1, pp. 24-27; Doc. 29-2, pp. 1-15).  Ms. Crutch provides no evidence of their employment records either.  As a result, the court record contains insufficient information about these employees' conduct.  The Court will not assume that they are suitable comparators.

[13] The defendants take the position in their brief that even if Ms. Crutch has stated a prima facie case of discrimination, the Board articulated legitimate non-discriminatory reasons for its decision to terminate Ms. Crutch's employment, and Ms. Crutch has failed to "come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but were merely pretext for discrimination.  (Doc. 30, pp. 48-49).  Ms. Crutch offers insufficient evidence of pretext, so the defendants' motion is also due to be granted on this alternative ground.

**CONCLUSION**

As the Eleventh Circuit held in *Chapman v. AI Transport*, 229 F.3d 1012

(11th Cir. 2000):

> Some of our opinions from past years purport to announce as a
> general rule that summary judgment is not a proper vehicle for
> resolving claims of employment discrimination which often turn on an
> employer's motivation and intent.   There is some question about
> whether that supposed rule was ever followed, but no question that it
> has not been followed in recent years. . . . . While acknowledging that
> questions of fact in job discrimination cases are both sensitive and
> difficult and there will seldom be eyewitness testimony as to the
> employer's mental processes, the Supreme Court has told us that
> "none of this means that trial courts or reviewing courts should treat
> discrimination differently from other ultimate questions of fact." *St.
> Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993). . . . The long
> and short of it is that the summary judgment rule applies in job
> discrimination cases just as in other cases. No thumb is to be placed
> on either side of the scale.

*Id.* at 1025-26 (citations, brackets, and quotations omitted).  The Court has viewed

the evidence in the light most favorable to Ms. Crutch, and it finds that even if one

or more of the defendants treated her unfairly, she has not presented sufficient

evidence of discriminatory motive to overcome the defendants' summary judgment

motion.  Therefore, the Court GRANTS summary judgment in favor of the

defendants on Ms. Crutch's claim.  The Court will enter a separate order consistent

with this memorandum opinion dismissing the action with prejudice.[14]

---

[14] The defendants present several other arguments concerning qualified immunity and collateral
estoppel.  Mr. Grimes and Ms. Howard also argue that they cannot be held liable as "decision
makers" under § 1983.  Because the Court grants the defendants' motion on the grounds stated
above, it does not reach the merits of the defendants' other arguments.

**DONE** and **ORDERED** this 4th day of August, 2014.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE